**Christopher Woods CASEY, Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**No. 50010.**

Court of Criminal Appeals of Texas.

June 4, 1975.

Rehearing Denied June 25, 1975.

Kerry P. Fitzgerald, Dallas, for appellant.

Henry Wade, Dist. Atty., Richard W. Wilhelm and Jim Burnham, Asst. Dist. Attys., Dallas, Jim D. Vollers, State's Atty., and David S. McAngus, Asst. State's Atty., Austin, for the State.

### OPINION

GREEN, Commissioner.

In a trial before a jury, appellant was convicted of murder. Punishment was assessed at life.

In his second ground, appellant argues that the court erred in refusing to instruct the jury on the law of circumstantial evidence. We agree.

The record reflects without dispute that during the night of May 22, 1973, or early morning hours of May 23, 1973, a robbery occurred at the Bray Car Care Center, a Gulf service station, located at the intersection of Forest Lane and Abrams just south of L.B.J. Freeway in Dallas, and that Richard Allen O'Neill, the night attendant, was shot in the head and killed. Jim Bray, proprietor of the station, testified that the sum of $93.74 was taken in the robbery.

The direct evidence sufficiently proved the corpus delicti of the offense. The remaining element of proof essential to the State's case was that appellant was the guilty agent in causing deceased's death. Self v. State, Tex.Cr.App., 513 S.W.2d 832; Brantley v. State, Tex.Cr.App., 522 S.W.2d 519 (1975).

The State relied entirely on the testimony of Deborah Ann Simmons and the written confession to connect appellant with the crime.

Simmons, a State's witness, testified that "back in May of 1973" she, her brother Clifton Currie and appellant were in a motel in Dallas. Some time during the night, appellant and Clifton Currie left the motel. She testified:

"Q. And did Christopher Casey tell you what they were going to do?

"A. Yes, sir.

"Q. What did he tell you they were going to do that night?

"A. That they were going to go out and rob a store.

"Q. Did he say anything else besides that?

"A. Just that if they couldn't find a store to rob, they were going to rob a station.

"Q. All right, rob a station. And was Clifton Currie there when he said all this?

"A. Yes, sir.

"Q. And did Clifton Currie say anything in this conversation, too?

"A. He said that if—if they did went out and rob somebody, if they didn't cooperate with them, that they were going to kill them.

"Q. Casey was right there in the room when he said this, is that right?

"A. Yes, sir.

"Q. And what did you do after you had this conversation? Did you and your—did you go somewhere or did they go somewhere or what took place next?

"A. They left.

" . . .

"Q. And at a later time that evening, did Christopher Casey and Clifton Currie come back to the motel?

"A. Yes, sir.

"Q. And about what time would this be?

"A. About between 1:30 and 2:00.

"Q. This was in the early morning hours, right?

"A. Yes, sir.

"Q. In the a. m. When they came in the door of the motel room, would you tell the jury what mood they were in?

"A. They were laughing when they walked through the door.

"Q. And did they tell you what took place out there, what they did?

"A. Left—Clifton spoke up and said that he walked in there and asked the guy for change for a dollar and that Chris walked up behind him and shot him in the back of the head.

"Q. And what did Chris tell you took place?

"A. He was laughing and he said he did it."

The witness did not at any time identify the place at which the robbery and killing happened, or who was robbed or who was shot. She did not even fix the date of the occurrence, except to say "back in May, 1973," although on cross-examination she was asked a couple of questions about May 23, 1973. While her testimony was direct evidence that appellant had committed an offense, it was not direct evidence that appellant was guilty of the murder of Richard Allen O'Neill, the deceased in the instant case.

■ ■ ■ In his written confession, appellant admitted that "in the latter part of May of this year (1973)" he and Clifton Currie left a motel room in Dallas together and, using a .32 caliber pistol, committed a robbery at a Gulf or Exxon service station "out north" close to a big freeway, shot the attendant (not named or identified), took between sixty and seventy dollars from the cash box, and drove back to the motel. There is nothing in the statement to identify the service station or the attendant who was shot or the date of the shooting other than as just stated. There is no fingerprint evidence in the record. Although the confession admits to guilt of a robbery and shooting, there is nothing in it which directly connects appellant with the murder of Richard Allen O'Neill. The ultimate fact of whether appellant, either by his own act or as a principal with another, killed deceased, was not established by any direct evidence. Such evidence was necessary to avoid a charge on circumstantial evidence. Crawford v. State, Tex.Cr. App., 502 S.W.2d 768; Hielscher v. State, Tex.Cr.App., 511 S.W.2d 305; Powell v. State, Tex.Cr.App., 494 S.W.2d 575; Blankenship v. State, Tex.Cr.App., 481 S.W.2d 147; 31 Tex.Jur.2d, Instructions, Sec. 123, p. 689. See Parker v. State, Tex.Cr.App., 492 S.W.2d 590. Cf. Hogan v. State, Tex.Cr.App., 496 S.W.2d 594.

Appellant timely requested a charge on the law of circumstantial evidence. The court erred in refusing to give such charge.

The judgment is reversed and the cause is remanded.

Opinion approved by the Court.